# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-23680-JEM/Becerra

ADELA MARIA SANTANA,

      Plaintiff,

v.

KILOLO KIJAKAZI,
Commissioner of
Social Security Administration,

      Defendant.

_____/

# REPORT AND RECOMMENDATION
# ON CROSS MOTIONS FOR SUMMARY JUDGMENT[1]

**THIS CAUSE** came before the Court on the Parties' Cross Motions for Summary Judgment.  ECF Nos. [14], [15].  Plaintiff Adela Maria Santana ("Plaintiff" or "Santana") filed her Motion for Summary Judgment arguing that the ALJ's decision was not based on substantial evidence because the vocational expert's testimony upon which the ALJ relied contained significantly overstated job numbers ("Plaintiff's Motion").  ECF No. [14].  Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed her Response in Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment with Supporting Memorandum of Law ("Defendant's Motion"), arguing that the correct legal standards were applied, and the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence.  ECF Nos. [15], [16].[2]  The Court must now determine whether the decision

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred this matter to the undersigned, pursuant to the administrative procedures of the Court. ECF No. [2].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [16], it is the same document as Defendant's Motion, ECF No. [15].

reached by the ALJ is supported by substantial evidence and whether the correct legal standards were applied. After a review of the Motions, the record, and all relevant authorities, it is hereby **RECOMMENDED** that Plaintiff's Motion, ECF No. [14], be **DENIED**, and Defendant's Motion, ECF No. [15], be **GRANTED**.

## I. BACKGROUND

On January 24, 2020, Plaintiff filed an application for supplemental security income benefits. R. at 244–45. Plaintiff alleged a disability onset date of January 29, 2019. *Id.* at 244. Plaintiff was born on August 13, 1971, and was 48 years old at the time her application was filed. *Id.* The Social Security Administration ("SSA") initially denied Plaintiff's application on February 13, 2020, and again on reconsideration on May 1, 2020. *Id.* at 25. After the claim was denied on reconsideration, Plaintiff filed a written request for hearing. *Id.* Plaintiff appeared telephonically for a hearing on November 4, 2020, in Miami, Florida, before the ALJ (the "ALJ Hearing"). *Id.* at 45–67. A vocational expert, Pedro Roman, testified at the hearing. *Id.* On January 7, 2021, the ALJ denied Plaintiff's application. *Id.* at 19, 25–39.

Thereafter, Plaintiff requested review of the ALJ's decision before the Appeals Council. *Id.* at 5. On September 22, 2021, Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council. *Id.* Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action. ECF No. [1].

### A. The ALJ Hearing

At the ALJ Hearing, Plaintiff testified that she is unable to work due to both physical and mental ailments. R. at 54–62. As to physical ailments, Plaintiff testified that she experiences fibromyalgia, lupus, anemia, asthma, irritable bowel syndrome, and sciatic pain. *Id.* at 55–58. As to mental ailments, Plaintiff testified that she experiences depression and anxiety, which includes

panic attacks. *Id.* at 58–60. Plaintiff testified that she regularly takes medication, including Albuterol, laxatives, and other "pills." *Id.* at 56–57, 61.

As to past work, Plaintiff testified that she worked in various hospitals' registration departments admitting patients, for approximately six years. *Id.* at 53–54. Thereafter, Plaintiff worked as a billing department representative for approximately one year and three months. *Id.* at 53. Plaintiff testified that she has not worked since January 2019. *Id.* at 54.

Vocational Expert Pedro Roman (the "VE") testified at the ALJ Hearing. The VE categorized Plaintiff's past relevant work using the Dictionary of Occupational Titles ("DOT") and referred to the Specific Vocational Preparation ("SVP") rating. *Id.* at 63–64. The VE testified that Plaintiff's past relevant work at the hospitals is categorized as a "hospital admitting clerk, 205.362-018, sedentary, SVP of 4, light as performed." *Id.* at 64. The VE testified that Plaintiff's other work is categorized as a "billing clerk, 214.362-042, sedentary, SVP of 4." *Id.* at 63–64.

Based on Plaintiff's testimony and the evidence in the record, the ALJ asked the VE to consider a hypothetical individual of the same age, education, and work experience as Plaintiff, with the following limitations. *Id.* at 64. This hypothetical individual could "occasional[ly] climb[] ramps and stairs, [but] never climb[] ladders, ropes or scaffolds"; "[o]ccasionally balance, stoop, kneel, crouch and crawl"; "[f]requently handle, finger and feel"; have "[o]ccasional exposure to extreme cold and extreme heat, vibration[,] [f]umes, odors, and pulmonary irritants"; have "[o]ccasional exposure to hazards"; "mentally apply[] common sense and understanding to carry (Inaudible) Level two"; "respond to demands and adapt to changes in work setting"; "work at an appropriate (inaudible) pace"; and "occasionally interact with supervisors, coworkers, and the public." *Id.* The questioning by the ALJ proceeded as follows based on the first hypothetical:

Q. I take it past work is unavailable.

A. That is correct.

Q.  Would there be any positions that fit that hypothetical?

A.  We have the following: Pricing tagger/marker.

Q.  Okay.

A.  209.587-034, light, SVP of 2, 311,457.  We have finisher, 789.687-050, light, SVP of 2, 117,561.  And we have office helper – no, let me strike that one due to the – you said occasional with coworkers and supervisors and the public.  So let's strike that one.  And we have cigar inspector, 529.687-042, light, SVP of 2, 117,561.  These are examples, not an exhaustive list.

*Id.* at 64–65.

Next, the ALJ asked the VE to consider a second hypothetical individual with the same limitations, but in addition could only function "at the sedentary exertion level."  *Id.* at 65.  The questioning by the ALJ proceeded as follows based on the second hypothetical:

Q.  For hypo two, the same as one, and in addition at the sedentary exertion level.

A.  Okay. We have the following: Nut sorter, 521.687-086, sedentary, SVP of 2, 12,192.  We have finisher, 731.687-014, sedentary, SVP of 2, 24,932.  And we also have stuffer, toy, 731.685-014, sedentary, SVP of 2, 24,932.

*Id.*

The ALJ also asked the VE to consider a third hypothetical individual with the same limitations, but in addition would be "off task 20 percent of the day."  *Id.*  The VE responded that 20 percent of a typical day "is way beyond what any employer in the national economy would allow someone to be off task; so therefore, no work."  *Id.*

Plaintiff's attorney asked the VE to consider a fourth hypothetical individual with the same work experience as Plaintiff, but with "the following limitations found in Exhibit 8F" to the ALJ Hearing.  *Id.* at 65–66.  The hypothetical individual could "follow work rules, us[e] judgment, deal[] with the public, function[] independently, maintain[] attention, maintain[] concentration," and "demonstrat[e] reliability," but the "period of limit[ation] [is] up to one third of the time."  *Id.*  Plaintiff's attorney asked the VE whether such a hypothetical individual would be able to perform

4

any work in the national economy. *Id.* at 66. The VE responded that there is "no work in the national economy based on those restrictions." *Id.* Plaintiff's attorney did not ask any questions, nor did he offer any information, regarding the number of jobs that the VE testified were available to Plaintiff.

B.      **Statutory and Regulatory Framework**

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at § 423(d)(3). Plaintiff "bears the burden of proving that [she] is disabled," and she "is responsible for producing evidence in support of [her] claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is "currently engaged in substantial gainful activity"; at step two, the ALJ must determine whether the claimant suffers from "severe"[3] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is able to return

---

[3] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to perform basic work activities "for a continuous period of at least twelve months," or is "expected to result in death." 20 C.F.R. §§ 404.1509, 404.1522.

to her past relevant work given [her] Residual Functional Capacity ("RFC");[4] and if not, at step

five, the ALJ must determine whether the claimant is able to perform other work as it exists in the

national economy, given her age, education, RFC, and work experience. *Id.* While "[a]n

affirmative answer to any of the above questions leads either to the next question, or, on steps three

and five, to a finding of disability[,]" "[a] negative answer to any question, other than step three,

leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return

to prior work the burden of proof shifts to the Secretary to show other work the claimant can do."

*Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516,

1518 (11th Cir. 1985)).

### C.     The ALJ Decision

On January 7, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning

of the Social Security Act from January 29, 2019, the alleged onset date. R. at 39. In reaching her

decision, the ALJ applied the five-step sequential evaluation process that must be used when

considering these types of claims. *Id.* at 25–39; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596

F. App'x at 910.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since January 29, 2019, the alleged onset date. R. at 27. At step two, the ALJ determined

that Plaintiff suffers from the following "severe" impairments: fibromyalgia; systemic lupus

erythematosus; cervicalgia; obesity; disorders of the gastrointestinal system; irritable bowel

syndrome; asthma; status-post COVID-19 infection; major depressive disorder; and generalized

---

[4] RFC is defined as "the most [a claimant] can still do despite [a claimant's physical and mental]
limitations." 20 C.F.R § 404.1545(a).

anxiety disorder. *Id.* The ALJ found that these medically determinable impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28." *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that "meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 28.

At step four, the ALJ formulated Plaintiff's RFC. *Id.* at 30–31. The ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she can] occasionally climb[] ramps and stairs; never climb[] ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel; and [experience] occasional exposure to extreme cold, extreme heat, vibrations, fumes, odors, pulmonary irritants, and hazards." *Id.* at 30. Additionally, Plaintiff "is able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, within the scope of reasoning level 2"; "respond to demands and adapt to changes in a work setting, work at an appropriate and consistent pace"; and "occasionally interact with supervisors, coworkers, and the public." *Id.* at 30–31. Based on the RFC, the ALJ found that Plaintiff is not able to perform her past relevant work as either a hospital admitting clerk or billing clerk. *Id.* at 37.

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 38. Specifically, the ALJ, relying on the VE's testimony from the ALJ Hearing, provided the following chart to support the finding that Plaintiff could perform the following jobs:

| Job Title | DOT Number | Exertional Level | Skill Level (SVP) | Approximate Number of Jobs Existing |
|---|---|---|---|---|
| Nut Sorter | 521.687-086 | Sedentary | Unskilled (2) | 12,192 Nationally |
| Stuffer, Toy | 731.685-014 | Sedentary | Unskilled (2) | 24,932 Nationally |
| Finisher | 731.687-014 | Sedentary | Unskilled (2) | 24,932 Nationally |

*Id.* The ALJ found that she had "determine[d] that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles," and "[b]ased on the testimony of the of the vocational expert, [she] concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 29, 2019, through the date of th[e] decision." *Id.* at 39.

### D. The Instant Motions

Plaintiff's challenge centers around one issue: whether at step five, the VE's testimony regarding the number of jobs available constituted substantial evidence upon which the ALJ could rely. ECF No. [14] at 5–16. First, Plaintiff argues that the VE's testimony regarding job numbers for the positions at issue (nut sorter, finisher, and toy stuffer) is unreliable and overstated. *Id.* at 12–13. Plaintiff comes to this conclusion by performing her own job market analysis, noting that the number of positions obtained through both Job Browser Pro (a software that Plaintiff alleges is commonly used in this context) and through an equal distribution, pro rata calculation of positions from the Occupational Employment Quarterly ("OEQ"), differs substantially from the VE's estimate. *Id.* at 6–10. Plaintiff asserts that of the 62,056 total jobs posited by the VE as existing in the national economy, up to 60,020 positions may not actually exist. *Id.* at 13. Because

of the discrepancy in job numbers, and the fact that the VE provided no information about his methodology, Plaintiff asserts that the VE's testimony cannot be considered substantial evidence. *Id.* Second, Plaintiff argues that the ALJ had an affirmative duty to resolve all "apparent conflicts" between the VE's testimony and the DOT, which she failed to do because the job numbers presented by the VE are inaccurate. *Id.* at 15–16.

In response, Defendant argues that the ALJ's decision was supported by substantial evidence. ECF No. [15] at 5. As an initial matter, because Plaintiff did not challenge the VE's testimony at the ALJ Hearing, Defendant argues that her proffered job numbers are not part of the record and cannot be considered by the Court. *Id.* Defendant asserts that Plaintiff's proffered job numbers are not only untimely but also unreliable, as Plaintiff is a layperson whereas the VE is an expert in this field. *Id.* at 8–9. Further, Defendant asserts that the VE is under no obligation to explain his methodology for calculating job numbers if those calculations are not challenged at the ALJ Hearing. *Id.* at 12. Moreover, Defendant responds that the discrepancy between the VE's job number statistics and Plaintiff's job number statistics is not an "apparent conflict" with the DOT, such that the ALJ would have an obligation to investigate and cure the discrepancy. *Id.*

## II.    ANALYSIS

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, No. 21-cv-11764, 2022 WL 97144, at *3 (11th Cir. Jan. 10, 2022) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that "the evidence preponderates against the Commissioner's findings," the Court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *See Crawford*, 363 F.3d at 1158–59. In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]" given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision "to determine whether the correct legal standards were applied." *Id.* However, no "presumption of validity attaches to the [ALJ's] conclusions of law." *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

While the claimant bears the burden of proof in the preceding steps, at step five, "[o]nce the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote*, 67 F.3d at 1559 (citing *Gibson*, 762 F.2d at 1518). If the Commissioner is able to show other work exists in the national economy which the claimant can perform, "the burden shifts back to the claimant to prove she is unable to perform the jobs suggested[.]" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

At step five, the step at issue here, "the critical inquiry [] is whether jobs exist in the national economy in significant numbers that the claimant can perform in spite of [her] impairments[.]"

10

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018). "Work which 'exists in the national economy' means 'work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country.'" *Goode*, 966 F.3d at 1280 (quoting 42 U.S.C. § 423(d)(2)(a)). Thus, at step five, the ALJ must determine both whether the claimant can perform other work as it exists in the national economy given her impairments, and whether such work exists in "significant numbers." *Id.*

In determining whether the claimant can perform work that exists in significant numbers in the national economy, "the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE[.]" *Washington*, 906 F.3d at 1360. VEs use data from the DOT, the Standard Occupational Classification system (SOC), the Occupational Employment Quarterly (OEQ), and other sources, including databases, to estimate the number of jobs available in the economy that a claimant can perform. *Id.*

Plaintiff's Motion is premised on proffered job numbers that Plaintiff presents now, for the first time, in her Motion. ECF No. [14]. Specifically, Plaintiff argues that the VE's testimony regarding job numbers for the positions at issue (nut sorter, finisher, and toy stuffer) is unreliable and overstated. *Id.* at 12–13. Based on calculations that Plaintiff makes using Job Browser Pro and through an equal distribution, pro rata calculation of positions from the OEQ, Plaintiff shows that the number of jobs available differs considerably from the VE's estimate, so much so that the number of jobs available in the national economy are not significant, and in any event, her calculation shows a conflict between the VE's testimony and the calculations she submits. Because the VE's job numbers are not reliable and conflict with the estimates she proposes, Plaintiff urges the Court to find that the ALJ's decision is not supported by substantial evidence, and that the ALJ erred by not addressing this conflict.

Plaintiff's argument fails because it is premised on Plaintiff's job numbers that were not before the ALJ.  It is well-settled that in determining "whether the ALJ's decision was supported by substantial evidence, . . . 'we will only look to the evidence actually presented to the ALJ.'" *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009–10 (11th Cir. 2020) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)); *see also Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 320 (11th Cir. 2021) ("[W]e must look only to the evidence that was presented to the ALJ, and not evidence that was subsequently presented to the district court or this Court.") (citing *Falge*, 150 F.3d at 1323).  Because the Court will not "reweigh evidence" or "substitute its judgment for that of the Commissioner," it is improper to consider Plaintiff's new job numbers at this stage, as they were neither presented to nor considered by the ALJ.  *See Matos*, 2022 WL 97144, at *3 (quoting *Winschel*, 631 F.3d at 1178).

Because the job numbers proposed now were not before the ALJ they could not have created an "apparent conflict" that would require any sort of resolution prior to the ALJ's decision. Indeed, Plaintiff's reliance on *Goode v. Commissioner of Social Security* is misplaced.  966 F.3d 1277 (11th Cir. 2020).  In *Goode*, the Court found that the VE incorrectly matched a DOT code to an SOC group.  966 F.3d at 1282.  Specifically, while the VE testified that the plaintiff could perform the job of a bakery worker, which corresponded with the SOC group "Production Workers, All Other," the VE incorrectly provided job number estimates from the SOC group "Food Processing Workers, All Other" instead.  *Id.*  The VE then provided the job number estimates from the entire SOC group of 65 positions within "Food Processing Workers, All Other", despite his testimony that the plaintiff could only perform one job therein—bakery worker.  *Id.* at 1283.  Thus, the estimate was overstated, possibly by a multiple of 65.  *Id.*  At the hearing, the plaintiff in *Goode* challenged the VE's methodology, pointing out that it was internally

inconsistent and overstated.  *Id.*  On appeal, the plaintiff in *Goode* argued that the ALJ failed to reconcile the conflict between the VE's testimony and the DOT/SOC, despite having an obligation to do so, and the Court agreed.  *Id.* at 1282–83.

Plaintiff claims that the VE here committed the same error.  However, that can only be correct if the VE's calculations here were derived as Plaintiff proposes.  The problem for Plaintiff, of course, is that the record is silent as to how the VE arrived at the job numbers.  Therefore, Plaintiff is asking the Court to *assume* that the VE here did what the VE in *Goode* did.  The critical difference of course is that the plaintiff in *Goode* challenged the numbers before the ALJ and that the basis for the VE's numbers in *Goode* were part of the record before the ALJ.

While the ALJ does have an obligation to cure an "unresolved conflict" between the VE's testimony and the DOT, the conflict must be apparent.  *See* SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."); *Washington*, 906 F.3d at 1356 ("After careful review, we conclude that, pursuant to the terms of the Ruling [in SSR 00-4P], and in light of the overall regulatory scheme that governs disability claims, the ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them.").  In *Goode*, the VE's testimony was "apparently inconsistent" with the DOT (and the SOC) because the VE matched the relevant job in the DOT with the wrong job category in the SOC at the outset, and therefore any numbers flowing from that estimate were inherently incorrect.  966 F.3d at 1282.  Such an error was apparent on the record and could have been independently verified by the ALJ with a review of the DOT and SOC.  *Id.*  By contrast, there was no challenge to the VE's testimony

regarding the jobs existing in the national economy here.  R. at 45–67.  As such, the conflict here only arises if the Court accepts Plaintiff's theory as to how the number provided was ascertained.[5] Because there was no "apparent conflict" before the ALJ and Plaintiff's employment statistics cannot be considered now to retroactively create one, the ALJ did not fail to resolve any conflicts.

Although the Court cannot consider Plaintiff's proffered job numbers now, the question remains: was the VE's testimony substantial evidence upon which the ALJ could rely.  Plaintiff argues that the VE's testimony is not reliable because it is "unclear upon what source or sources the VE relied and/or upon what methodology he employed to calculate the job incidence data for Nut Sorter, Finisher, and Toy S[tuffer]."  ECF No. [14] at 12.

The portion of the VE's testimony at issue was provided in response to the ALJ's second hypothetical, which the ALJ used to formulate the RFC at step four.  *See id.* at 6.  Specifically, the ALJ asked the VE to consider a second hypothetical individual with the same limitations as the first, but in addition could only function "at the sedentary exertion level."  R. at 65.  The VE responded:

> A. Okay. We have the following: Nut sorter, 521.687-086, sedentary, SVP of 2, 12,192.  We have finisher, 731.687-014, sedentary, SVP of 2, 24,932.  And we also have stuffer, toy, 731.685-014, sedentary, SVP of 2, 24,932.

*Id.*  As Plaintiff correctly notes, the VE provided only job titles, codes, and final numbers—which the ALJ later interpreted to be the number of available jobs in the national economy—and no explanation of how he arrived at those estimates.

---

[5] Indeed, the job numbers themselves *could not* be inconsistent with the DOT, or the SOC, because neither of those publications contain job numbers.  *See Goode*, 966 F.3d at 1280; *see also Purdy v. Berryhill*, 887 F.3d 7, 14–15 (1st Cir. 2018) ("The DOT 'just *defines* jobs,' however; '[i]t does not report how many such jobs are in the national economy.'") (quoting *Brault v. Comm'r Soc. Sec. Admin.*, 683 F.3d 443, 446 (2d Cir. 2012)).  Rather, the VE derives the job numbers from outside sources, matches them to the jobs within the DOT and SOC, and then synthesizes them using his own expertise before presentation to the ALJ.  *See Goode*, 966 F.3d at 1280.

While the VE's testimony is certainly sparse, it is sufficient to constitute substantial evidence based on the undersigned's reading of the law in this Circuit.  In *Valdez v. Commissioner of Social Security*, the Eleventh Circuit found that an ALJ's opinion was based on substantial evidence, where the ALJ relied solely on a VE's testimony for employment statistics.  808 F. App'x at 1009–10.  The plaintiff in *Valdez* proffered his own employment statistics for the first time at the district court level, as did the Plaintiff herein, and argued that because the VE's statistics were "extremely overstated" by comparison, the ALJ could not have relied on them as substantial evidence.  *Id.*  The Court declined to consider the plaintiff's new evidence, and found that the VE's testimony, which did not provide a basis for the job numbers' calculation, was sufficient.  Indeed, the Court found that "[a]n ALJ may rely on the testimony of a vocational expert as substantial evidence."  *Id.* at 1009.

Similarly, in *Bacon v. Commissioner of Social Security*, the Eleventh Circuit held that an ALJ's opinion was based on substantial evidence, where the ALJ relied solely on a VE's testimony for employment statistics.  861 F. App'x at 321.  In *Bacon*, the plaintiff also proffered new employment statistics at the district court level, which the Eleventh Circuit found to be inadmissible as they were not part of the record before the ALJ.  *Id.* at 320.  The Eleventh Circuit explained that "[a]t [the plaintiff's] hearing, the *only* evidence presented to the ALJ regarding the availability of cleaner and polisher jobs was through the VE's testimony that there were 325,000 of them in the national economy," and because the evidence "was neither clearly and unmistakably wrong on its face, nor was it internally inconsistent and incomplete," the ALJ's step five finding, which relied on that testimony, was supported by substantial evidence.  *Id.* at 320–21 (emphasis added).

Relying on both *Valdez* and *Bacon*, Courts within this District have found a VE's testimony regarding job numbers to be substantial evidence even when the basis for those calculations was not provided.[6]   In *Ramos v. Kijakazi*, the court similarly rejected the plaintiff's "post-hearing research into the job data discussed by the VE" and held that an ALJ's decision was based on substantial evidence at step five.   No. 20-cv-23478, 2021 WL 5746358, at *8 (S.D. Fla. Nov. 9, 2021), *report and recommendation adopted*, No. 20-cv-23478, 2021 WL 5743332, at *1 (S.D. Fla. Dec. 2, 2021).   The *Ramos* court noted that the Eleventh Circuit "'has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figure[s] provided by the Bureau of Labor Statistics in the [Occupational Employment Statistics]' . . . [t]hus, even when a VE's job numbers conflict with the job numbers provided by the Bureau of Labor Statistics, an ALJ has no duty to investigate or resolve this conflict."   *Id.* at *7.   Similarly, the court in *Perez v. Kijakazi* held that an ALJ's decision was based on substantial evidence at step five, where the ALJ relied on the VE's testimony for employment statistics, which was not challenged at the time of the ALJ hearing.   No. 21-cv-23740, 2022 WL 17094932, at *11 (S.D. Fla. Nov. 3, 2022), *report and recommendation adopted*, No. 21-cv-23740, 2022 WL 17093619, at *1 (S.D. Fla. Nov. 21, 2022).   The *Perez* court also declined to consider the plaintiff's proffered employment statistics, noting "the Court is foreclosed from considering the new

---

[6]   Whether the underlying data and methodology behind the calculations provided by a VE should be produced was at issue in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019), where the Supreme Court declined to fashion any such rule.   The Supreme Court, in deciding that determinations such as these are to be made case-by-case, found that "[a]ssuming no demand, a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data."   *Id.* at 1155.   Although the issue here differs slightly in that the VE provided nothing more than his final numbers, the Court's conclusion is certainly instructive.   In addition, it is worth noting that the plaintiff in *Biestek*, who challenged the VE's calculations at the ALJ hearing, conceded that the absence of a challenge by a plaintiff would render the issue moot.   *Id.* (referring to this notion as the parties' "common ground").

evidence presented by Mr. Perez in the Motion, and, as such, Mr. Perez has not established that the ALJ erred when she considered the VE's job estimates as substantial evidence because that is the only evidence regarding the number of jobs available in the record." *Id.* at *11.  Thus, the court held that the ALJ's opinion was based on substantial evidence at step five.  *Id.*; *see also Collas v. Acting Comm'r of Soc. Sec. Admin.*, No. 20-cv-1791-MCR, 2022 WL 370115, at *1 (M.D. Fla. Feb. 8, 2022) (holding that the ALJ's decision relying on VE testimony at step five was based on substantial evidence, and stating "an ALJ is authorized to rely on the testimony of a VE in determining the number of available jobs, and there is no requirement that the VE produce all data considered in reaching his or her conclusions") (citing *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012)).

Thus, while the VE's testimony here was only the number of jobs available without any explanation of how the number was derived, the ALJ was still entitled to rely on it given that there was no challenge made to the numbers at the ALJ Hearing, no conflict was apparent from the record before her, and no other evidence as to numbers was in record.  The law is clear that absent anything else on the record, an ALJ can rely on the VE's testimony.  Plaintiff provides no case law stating otherwise, and the Court is not aware of any.  As the record stands, the undersigned finds that the ALJ's decision was based on substantial evidence.

## III.    RECOMMENDATION

For the reasons discussed herein, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. [14], be **DENIED**, and Defendant's Motion for Summary Judgment, ECF No. [15], be **GRANTED**.

## IV.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a de novo determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on February 22, 2023.

_____
**JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE**